IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALLACE FLOYD ARNOLD, | : | Case No. 1:09-CV-452 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING PLAINTIFF'S |
| | : | MOTION FOR PARTIAL |
| CSX TRANSPORTATION, INC., | : | SUMMARY JUDGMENT |
| | : | |
| Defendant. | : | |

This matter is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Wallace Floyd Arnold ("Arnold"). (Doc. 29.) Arnold, who contends that he was exposed to toxic battery fumes while operating a locomotive, brought this negligence action against Defendant CSX Transportation, Inc. ("CSX") under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., and the Federal Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq*., formerly known as the Boiler Inspection Act ("BIA").  Arnold now seeks partial summary judgment against CSX on the issue of liability.  Finding that there are genuine issues of material fact for trial, the Court **DENIES** Arnold's request for partial summary judgment.

I.  FACTUAL BACKGROUND

A.  Arnold experiences a physical reaction while aboard Locomotive No. 6424.

At all material times, Arnold was employed by CSX as a locomotive engineer.  (Doc. 1.) On June 29, 2007, Arnold and conductor David Forrester boarded the lead unit of Locomotive No. 6424 ("L-6424") at the Queensgate Yard (the "Yard") in Cincinnati, Ohio.  (Arnold Dep. 59:4.)  Arnold and Forrester waited on L-6424 for approximately one hour prior to departure.

1

(Arnold Dep. 48:17-18.) The windows on L-6424 were open and Arnold was seated on the engineer's side of the locomotive.[1] (Id. at 58:21-24; 73:1) Toward the end of that hour, Arnold began to feel "a little burning on [his] skin." (Id. at 52:17-24.) Initially, Arnold believed that the burning sensation was associated with the heat and his being "hot and sweaty." (Id. at 53:9-15.) The burning sensation was most noticeable on his right arm, but was also felt on his left arm and forehead. (Id. at 54:5-12.)

L-6424 eventually departed the Yard and proceeded approximately twenty minutes to Winton Place. (Id. at 45:12-15.) During the twenty minute trip to Winton Place, "the burning sensation became more pronounced." (Id. at 61:18-21.) At this time, Arnold asked Forrester if he smelled "anything funny." (Id. at 62:1-5.) Forrester responded that he did not. (Id. at 62:17-21.)

Once L-6424 arrived at Winton Place, the train received a stop signal and, consequently, was forced to stop for approximately twenty-five minutes. (Id. at 62:22-63:11.) While stopped at the Winton Place signal, Arnold began to notice an unusual odor. (Id. at 63:20-22.) Arnold again asked Forrester if he smelled anything unusual. (Id. at 64:1-2.) Forrester replied that he did not. (Id.) Arnold continued to experience a burning sensation on his arms and forehead and, after ten or fifteen minutes at Winton Place, Arnold's eyes began to water and Arnold began to experience difficulty breathing. (Id. at 64:22-65:11.) At that point, Arnold asked Forrester a third time if he smelled anything unusual and suggested, "It might be the batteries." (Id. at 67:13-20.) Arnold testified that Forrester did not smell anything unusual at this time. (Id. at

---

[1] The right side of the locomotive is referred to as the engineer's side, while the left side of the cab is known as the conductor's side.

73:12-16.)

Because Arnold's symptoms were increasing, Arnold asked Forrester if he would check outside the locomotive and try to determine the cause of the odor. (Id. at 77:5-7.) Upon inspecting the exterior of L-6424, Forrester reported that the batteries on the engineer's side were "fuming" and "smelling." (Id. at 77:11; 79:6.) Arnold reported this information to the Yardmaster and awaited further instructions. (Id. at 79:12-80:3.) In the meantime, Arnold left the lead unit and awaited instructions in the second locomotive unit. (Id. at 81:16-17.) Arnold continued to experience difficulty breathing and the burning sensation on his skin, and also began to notice a burning sensation in his nose and throat. (Id. at 96:17-23.) Arnold then contacted his supervisor, informed him of the situation and told him, "You need to come up here. I think I need to go to the hospital." (Id. at 85:17-18.)

### B. CSX technicians inspect L-6424.

Mike Blaker, an electrician, and Christopher Fromme, a machinist, both employees of CSX, responded to the service call for L-6424. (Blaker Dep. 8:24-11:23.) After speaking with the crew, Blaker opened the doors to the battery compartment and "stuck [his] head down inside the engineer side, [but] did not notice a smell." (Id. at 16:3-5.) Blaker then moved to the conductor's side of the locomotive where, after opening the doors to the battery compartment, he detected "a slight smell in the batteries." (Id. at 16:7-8.) Blaker testified that he then walked into the locomotive's cab, where Arnold had been sitting, and "did not notice any smell." (Id. at 16:9.) When asked by Arnold and Forrester if the problem "was gas," Blaker told the crew that L-6424 "was gassing a little bit." (Id. 1at 6:11-12; Fromme Dep. 14:19-20.) "Gassing," according to Mr. Blaker, means that the batteries "give off a smell." (Blaker Dep. 12:16.) For

"safety sake," Blaker then ordered that L-6424 be sent to the repair shop for evaluation. (Blaker Dep. 18:17-19.) Blaker informed Arnold and Forrester that L-6424 had been "shopped" and that they were not to reenter the locomotive. (Id. 19:16-18.) At this time, Arnold sought medical treatment for an "inhalation injury." (Doc. 26-4.)

At the repair shop, CSX electrician Tom Conrad inspected L-6424. (Doc. 33-2.) Conrad applied a voltage meter to the batteries to check for excessive voltage, which is a common cause of excessive gassing. (Conrad Aff. ¶ 4.) Conrad found no excessive voltage. Conrad also performed an air quality test to check for the presence of sulfuric acid, which, according to Conrad, would be present if the batteries were gassing excessively. (Id. at ¶ 5.) No sulfuric acid was detected. (Id.)

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." Id. at 252.

## III. ANALYSIS

The Complaint alleges that sulfuric acid fumes produced from "leaking locomotive batteries" were emitted into the cab of L-6424 on June 29, 2007, causing severe and permanent injury to Arnold's respiratory system. (Doc. 1.) Arnold contends that he is entitled to summary judgment on the issue of liability, because no genuine issue of fact exists as to whether CSX violated the safety requirements of the LIA—specifically, the duty not to use locomotive batteries that are "gassing excessively." Arnold also requests a finding that CSX's violation of the LIA precludes it from asserting the defense of contributory negligence at trial.

### A. Arnold's Claims under the FELA and the LIA

The LIA imposes a number of safety requirements on railroads, violations of which are actionable under FELA. Urie v. Thompson, 337 U.S. 163, 189 (1949); Szekeres v. CSX Transp., Inc., 617 F.3d 424, 427 (6th Cir. 2010) ("Claims brought under the LIA, formerly the Boiler Inspection Act (BIA), are actionable under the FELA."). Specifically, the LIA provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances-
>
> > (1) are in proper condition and safe to operate without unnecessary danger of personal injury;

> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.  The Federal Railroad Administration ("FRA") has also promulgated regulations pursuant to the LIA.  See 49 C.F.R. § 200 et seq.  Relevant to Arnold's motion for partial summary judgment, FRA regulation 49 C.F.R. § 229.43(b) requires that "[b]attery containers shall be vented and batteries kept from gassing excessively."  A violation of the LIA or its regulations is per se negligence in a FELA suit.  Szekeres, 617 F.3d at 427.

Arnold contends that CSX violated 49 C.F.R. § 229.43(b) as a matter of law because the batteries on L-6424 were "gassing excessively" on June 29, 2007.  As this Court understands it, Arnold's argument is this: Arnold's physical reaction, allegedly due to the inhalation of sulfuric acid fumes, combined with testimony that CSX employees detected an odor coming from the batteries, proves as a matter of law that the batteries on L-6424 were "gassing excessively" in violation of 49 C.F.R. § 229.43(b).  (Doc. 29.)  Put another way, Arnold asks the Court to find that "gassing excessively" as used in the FRA regulation means "gassing that is extensive enough to enter the cab and be inhaled by employees."  (Doc. 31.)

In opposition, CSX argues that the addition of the modifier "excessively" in 49 C.F.R. § 229.43(b) gives rise to a factual question on whether the regulation has been violated.  (Doc. 30.)  That is, a proper reading of the regulation permits a violation to be found not by the mere presence of gassing, but rather only by "excessive" gassing.  (Id.)  Specifically, CSX argues, there exists a factual dispute as to how much gassing is permissible under the regulations and how much gassing was actually present on L-6424 on the date in question.  (Id.)  In support of its

argument, CSX points to the testimony of Mike Blaker, who testified that he did not detect an odor in the cab of L-6424 and notice only a "slight smell" in the battery compartment, and the affidavit of Tom Conrad, who testified that he did not detect the presence of sulfuric acid or excessive battery gassing upon inspecting L-6424.

This Court was able to locate only one case addressing the FRA's requirement that batteries be kept from "gassing excessively." In Taylor v. Union R.R. Co., No. 09-123-GPM, 2010 WL 2977142 (S.D. Ill. July 27, 2010), the Southern District of Illinois denied the plaintiff's motion for partial summary judgment on nearly identical facts. The plaintiff in Taylor claimed that he was exposed to sulfuric acid fumes from a defective, overheating locomotive battery while riding in the cab of the locomotive. Taylor, 2010 WL 2977142, at *1. The plaintiff moved for summary judgment on his LIA claim, arguing that the railroad violated 49 C.F.R. § 229.43(b) as a matter of law. Id. The court denied the motion, noting that the level of sulfuric acid to which the plaintiff was exposed was sharply disputed. Id. at *2. According to the Southern District of Illinois, "the FRA measures excessive gassing of locomotive batteries using the permissible exposure limit ('PEL') developed by [OSHA]. Specifically, the FRA 'employs the OSHA criteria to determine compliance with the [LIA].'" Id. (quoting Locomotive Crashworthiness and Cab Working Conditions, Report to Congress from the Federal Railroad Administration, September 1996, Ch. 7.) Both parties in Taylor agreed that the relevant OSHA standard for sulfuric acid is 1 mg/m3. Id. Because the record contained conflicting evidence with regard to the level of sulfuric acid to which the plaintiff was exposed, the court denied the plaintiff's motion. Id.

Here, neither party has mentioned, let alone presented evidence on, the relevant OSHA standards. Thus, the record contains no evidence on the level of sulfuric acid in the air aboard L-6424 at the time of the incident. Rather, the record contains only this: Arnold detected an odor aboard L-6424 on June 29, 2007 and was subsequently treated for an inhalation injury (Arnold Dep. 63:20-22; Doc. 26-4); the conductor aboard L-6424 did not detect an odor during the incident (Arnold Dep. 62:17-21; 64:1-2; 73:12-16); CSX electrician Blaker testified that the batteries on L-6424 were "gassing a little bit" and that he detected "a slight smell in the batteries" (Blaker Dep. 16:7-8; 11-12); shortly after the incident, CSX electrician Conrad performed an air quality test but was unable to detect the presence of sulfuric acid (Doc. 29-7). On the present record, a genuine issue of fact exists as to whether the batteries on L-6424 were gassing excessively in violation of 49 C.F.R. § 229.43(b).

### B. Contributory Negligence Defense

Given the Court's conclusion that the record discloses genuine issues for trial as to CSX's liability, it is unnecessary for the Court to consider whether CSX's alleged violations preclude it from asserting the defense of contributory negligence.

### IV. CONCLUSION

For the foregoing reasons, Arnold's Motion for Partial Summary Judgment (doc. 29) is **DENIED**.

IT IS SO ORDERED.

                                                ___s/Susan J. Dlott_____
                                                Chief Judge Susan J. Dlott
                                                United States District Court